

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7th floor*             973-645-2700
*Newark, New Jersey 07102*

January 8, 2021

**VIA ELECTRONIC MAIL**

Honorable Katharine S. Hayden
United States District Judge
U.S. Post Office and U.S. Courthouse
Federal Square
Newark, New Jersey 07102

       Re:    *United States v. Milton Latham*, Crim. No. 16-380

Dear Judge Hayden:

       The United States submits this letter in opposition to the Defendant Milton Latham's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] While it is unfortunate that Mr. Latham tested positive for COVID-19, he has been placed in isolation, he has not displayed any serious symptoms, and as of December 29, 2020, Fort Dix medical staff designated him as recovered from COVID-19. Further, releasing Mr. Latham, who is a career offender with a clear pattern of recidivism, would be inconsistent with the 18 U.S.C. § 3553(a) factors which led Your Honor to deny Mr. Latham's original motion for a sentence reduction. Mr. Latham's renewed motion should be denied.

       Bureau of Prison ("BOP") Medical records, attached hereto as Exhibit 1, indicate that Mr. Latham was placed into quarantine on December 16, 2020,

---

[1] Mr. Latham represents that he sent a letter to the warden of on November 23, 2020, renewing his motion for compassionate release and has not received a response. *See* Def.'s Renewed Ltr. Mot. for Compassionate Release at 2 n.1, *U.S. v. Latham,* 16-CR-380 Dkt. 140 (Dec. 23, 2020) [Hereinafter Def.'s Ltr.]; *see also id.*, Ex. C. Accordingly, the Government does not contest that the exhaustion requirement has been satisfied here.

after being exposed to COVID-19. *See* Ex. 1 at 3.[2] On December 21, 2020, Mr. Latham tested positive for COVID-19 for the first time and was moved to isolation with other inmates who tested positive. *See id.* at 41. According to BOP, while in isolation, Mr. Latham receives daily checks of his temperature and his vital signs. *See id.* at 22-30. BOP medical records show that Mr. Latham's temperature, his pulse, respiration rate, and oxygen levels have all been at normal levels since his positive diagnosis on December 21, 2020 to December 28, 2020. *See id* at 22-25. He has had elevated blood pressure on some days but that is consistent with his pre-existing condition of hypertension. *See id.* at 23-24. In health screenings from December 24, 2020 to December 26, 2020, Mr. Latham reported no cough, shortness of breath, fatigue, body aches, soar throat, diarrhea, headache, loss of taste or smell, nausea or vomiting. *Id.* at 27-30. As of December 29, 2020, BOP designated Mr. Latham as recovered from COVID-19, following CDC recommendations that isolation and other precautions may be discontinued if a person has had no symptoms 10 days after he or she tested positive for the virus.[3] *See id.* at 1. Therefore, fortunately, it appears that Mr. Latham's condition is stable, monitored, and that he has not suffered any serious symptoms of COVID-19, and indeed, appears to be fully recovered.

      Courts have repeatedly denied compassionate release motions by inmates, like Mr. Latham, who have contracted COVID-19, are receiving adequate medical care, and have not suffered serious symptoms. *See, e.g., United States v. Eddings*, No. 2:09-CR-00074 (JAM) (AC), 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020), *appeal dismissed*, No. 20-10186, 2020 WL 7231968 (9th Cir. Nov. 18, 2020) ("[G]iven that he has had the virus for over 10 days now without complications, the Court cannot find Defendant's situation to be an 'extraordinary or compelling circumstance' that warrants his release."); *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *1 (E.D. Mich. July 17, 2020) (denying compassionate release for defendant with hypertension, asthma, kidney disease, and stage II diabetes because the defendant was managing his conditions and his health conditions did not cause him to suffer severe health complications after contracting COVID-19); *United States v. Adams*, No. 10-CR-82 (RJS), 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020) (Denying compassionate release because "[w]hile it is undisputed that Adams has severe underlying health issues that would otherwise increase his risk of complications

---

[2] The Government has not appended Mr. Latham's updated medical records here but has provided them under separate cover as Exhibit 1 to the Court. The Government has already provided the records to defense counsel.

[3] *See* CENTER FOR DISEASE CONTROL, *Duration of Isolation and Precautions for Adults with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited Jan. 6, 2021).

from COVID-19, the fact remains that he has already contracted, and seemingly recovered from, COVID-19").

Moreover, releasing Mr. Latham now, two weeks after he has had a positive COVID-19 test, poses a risk that he will spread COVID-19 to members of the public, including his mother, with whom he proposes to live upon release. This presents an unacceptable risk to the public. *See United States v. Bobroff*, 2020 WL 4271712, at *3 (D. Colo. July 24, 2020) (release is not warranted where inmate tested positive and is being treated; "releasing Mr. Bobroff under the present circumstances would create a risk of infection for individuals who come into contact with him, such as his family members and Probation Office employees."); *United States v. Gates*, 2020 WL 3159184 (S.D. Miss. June 12, 2020) ("[G]iven his diagnosis, moving Gates out of quarantine and releasing him could pose additional risks to those with whom he comes into contact.").

In his renewed motion, Mr. Latham claims that even if he shows no symptoms, there is a risk that he could suddenly die or become seriously ill if he is re-infected at Fort Dix. *See* Def.'s Ltr. at 3-5. But he points to no scientific evidence to buttress this assertion. To the contrary, the CDC advises that "[c]ases of reinfection with COVID-19 have been reported, but remain rare." *See* CENTER FOR DISEASE CONTROL, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Jan. 5, 2021). And, courts have routinely refused to rely on a risk of reinfection as a basis for compassionate release because of the lack of scientific evidence supporting such a claim. *See, e.g., United States v. Wiltshire*, No. CR 11-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("[T]he risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection."); *United States v. Johnson*, No. 12-CR-109 (PPS), 2020 WL 7244979, at *1 (N.D. Ind. Dec. 9, 2020) ("Even if the frightening reports of a second fatal infection with COVID-19 are entirely accurate, they involve 3 of the 124,538 federal inmates in BOP custody, and represent only .0024% of that population. These most unfortunate cases are so few in number that they do not provide extraordinary or compelling reasons to shorten Johnson's prison term."); *Adams*, 2020 WL 4505621 at *3 ("[A]lthough the Court recognizes that at least some courts have released defendants on the basis that they could contract COVID-19 again . . . , the Court finds that this possibility is also far too speculative a basis to release Adams in this case.").

Finally, and most importantly, Mr. Latham's diagnosis does not change the fact that he is a career offender with a litany of drug and firearm convictions, many of which he committed while on bail or soon after his release from prison. Your Honor's September 17, 2020 oral opinion set forth in exhaustive detail the Defendant's criminal history and why, given that history and the circumstances

of his underlying drug conviction, the Section 3553(a) factors weigh strongly against a reduction by nearly half of the 144-month sentence Judge Salas originally imposed:

> Mr. Latham was given many, many opportunities to demonstrate his ability to comply with terms of release, including while he was out on bail during probationary periods, and as part of the ISP, Intensive Supervision Program. Each time, Mr. Latham either picked up a new charge and/or violated the terms of his release. In the face of his history of noncompliance and recidivism, I cannot justify cutting five years off his sentence and releasing him to the public even under supervision.

*See* Transcript of Oral Decision at 16, U.S. v. Latham, 16-CR-380 (Sept. 17, 2020). Your Honor further stated:

> [T]he conclusion is inescapable that in this case the sentence was fully deserved in terms of meeting the 3553(a) factors of just punishment and protection of the public and deterrence. And the court's mandate here is not simply to look at the medical conditions. It, in fact, doesn't look at anything until the medical condition is satisfied. And in this case Mr. Latham, unfortunately, brings to the table a criminal history that constrains me to deny his motion.

*Id.* at 25. Those same considerations foreclose Mr. Latham's renewed request.

For these reasons, as well as the reasons discussed more fully in the Government's opposition to Mr. Latham's first motion for compassionate release, Dkt. No. 128, this Court should deny Mr. Latham's second motion for a sentence reduction.

Respectfully submitted,

RACHAEL A. HONIG
Acting United States Attorney

/s Jonathan Fayer

_____

By:   Jonathan Fayer
Assistant United States Attorney

cc:   Candace Hom, Assistant Federal Public Defender (via electronic mail)